## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **BIOSIG INSTRUMENTS, INC.,** | |
| Plaintiff, | **Case No. 04 CIV. 6654 (AKH)** |
| v. | |
| **THE NAUTILUS GROUP, INC.,** | |
| Defendant. | |

### DECLARATION OF DR. GREGORY LEKHTMAN

I, Dr. Gregory Lekhtman, declare as follows:

1.      I am the President of Plaintiff Biosig and the inventor named on U.S. Patent No. 5,337,753, at issue in this case.

2.      My patent deals with heart rate monitors of the type commonly found on exercise equipment.   I believe that Nautilus has incorporated my invention into many of its products.

3.      Biosig is a small company that did not possess the resources to hire a large litigation law firm.  Therefore, when Biosig filed this lawsuit, it employed the services of Humayun Siddiqi, who, together with his father Zafar, are two attorneys in the Law Offices of Zafar A. Siddiqi.

4.      Shortly after Biosig filed suit, I received the impression that Nautilus was not interested in litigating and desired instead to settle.  I heard this recounted from conversations with Nautilus's counsel, and Nautilus expressed the same in communications it sent to my lawyer throughout the year 2005.   However, Nautilus expressed difficulties in meeting, postponing the first settlement conference until the end of November, 2005.

5.      I was hopeful that the conference in November of 2005 would lead to a settlement.

6.      In December of 2005, Nautilus made a settlement offer that I found offensively low.   Nautilus reiterated its interest in settling, and asked for more information in order to advance settlement.

7.      In January of 2006, Nautilus promised to provide informal discovery on the technical details of its products.  Nautilus never fulfilled its promise.

8.      Rather than waiting for Nautilus to fulfill its promise, Biosig proceeded with preparing a very detailed analysis explaining why another representative product infringed. Biosig provided that analysis to Nautilus on March 21, 2006.  At the same time, Biosig reiterated the identity of at least 30 other products believed to infringe.

9.      Despite having asked for more information as a prerequisite for further settlement discussions, Nautilus never responded to the second infringement analysis of March 21, 2006.

10.      Biosig then considered abandoning settlement and proceeding with discovery. But cost was a significant issue, and Biosig lacked the resources to hire a law firm with the resources of Nautilus's lawyers.

11.      Biosig therefore hired the Finnegan firm not to litigate, but rather to overview the case and determine if other settlement opportunities might exist.  The process of engaging a firm and having the firm come up to speed took somewhat longer than I expected.

12.      In April of 2007, I learned that Finnegan had contacted Nautilus and that Nautilus was still interested in trying to resolve the litigation through a settlement.

13.      The next settlement meeting took place in New York City on about June 19, 2007. I attended, as did five other representatives of Biosig and three representatives of Nautilus.  At

the meeting those representing Biosig reiterated that at least 30 of Nautilus's products infringe, that Nautilus is continuing to infringe as it introduces even more unauthorized products containing my patented heart rate monitor, that the harm to Biosig appears at least to be on the order of tens of millions of dollars, and that if a settlement could not be reached, litigation would ensue.

14.     At no time during that meeting (or at any other time) did Nautilus complain of delay or prejudice, or express the view that it thought the case was over.   In fact, Nautilus's lawyer suggested that the best approach might be for the parties to proceed with discovery before revisiting settlement.

15.     For a while following the June 2007 settlement conference, I held out some hope that Nautilus would come back with a reasonable offer.  When, after a few months, no offer arrived, Biosig began an earnest attempt to make the financial arrangements necessary to engage litigation counsel with resources commensurate to Nautilus's lawyers.  It took us a number of months to work out those details but during the first quarter of 2008 those details were arranged, and there is now no reason why this case can not immediately proceed to discovery.


I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct.


May 9, 2008

Dr. Gregory Lekhtman